IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CALMAT CO.,

    Plaintiff,

vs.                                               Civ. No. 16-26 KG/WPL

OLDCASTLE PRECAST, INC.;
JOHN DOES 1-5; and
KRAFT AMERICAS HOLDINGS,
INCORPORATED,

    Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff CalMat Co.'s Amended Motion for Attorneys' Fees, Costs, and Expenses (Amended Motion), filed on January 6, 2017. (Doc. 82). Defendant Oldcastle Precast, Inc. (Oldcastle) filed a response on January 20, 2017, and Defendant Kraft Americas Holding, Inc. (KAHI) filed a response on February 1, 2017. (Docs. 88 and 97). Plaintiff CalMat Co. (CalMat) filed replies to these responses on February 6, 2017, and February 17, 2017. (Docs. 100 and 107). Having reviewed the Amended Motion and the accompanying briefs, the Court grants the Amended Motion in part in that it will award CalMat $25,282.50 (plus the applicable gross receipts tax) in attorneys' fees and $738.75 in costs, which will both be payable from the interpleaded fund.

*A. Background*

In February 1999, American Building Supply, Inc. agreed to pay royalty payments to Defendant Kraft Americas, L.P. (Kraft L.P.) for aggregate mined in New Mexico. (Doc. 1) at ¶ 4); (Doc. 4-1). Days after entering into the royalty agreement with American Building Supply,

Inc., Kraft L.P. apparently assigned its interest in the royalty agreement to KAHI, thereby allegedly making KAHI the sole beneficiary of the royalty agreement. (Docs. 1-3 and 1-4).

In June 2011, Inland Concrete Enterprises, Inc. Employee Stock Ownership Plan (Inland Concrete) obtained a default judgment in the United States District Court for the Central District of California against Kraft L.P., and *pro se* Defendant Rune Kraft (Kraft) in the amount of $3,808,483.00 plus interest of 0.18% per annum. (Doc. 1) in MC No. 15-33 WJ; (Doc. 1) at ¶¶ 5 and 10.

In May 2015, CalMat succeeded to the interests of American Building Supply, Inc. (Doc. 1) at ¶ 2; (Doc. 9) at 1. CalMat, therefore, is obligated under the 1999 agreement to pay royalty payments. CalMat contends that it, indeed, paid the royalty payments to "Kraft Americas." (Doc. 9) at ¶ 2 in MC No.15-33 WJ.

In July 2015, Inland Concrete filed in this District Court a Certification of Judgment for Registration in Another District. (Doc. 1) in MC No.15-33 WJ. Inland Concrete then assigned its interest in the default judgment to Oldcastle. (Doc. 1) at ¶ 1. In August 2015, the Court issued a Writ of Garnishment naming CalMat as garnishee and Kraft L.P. as the judgment debtor. (Docs. 3 and 4) in MC No.15-33 WJ.

KAHI, who claims to be the sole beneficiary of the royalty agreement, contends that CalMat cannot garnish the royalty payments owed to KAHI because KAHI is not the judgment debtor. Oldcastle, however, argues that Kraft L.P.'s assignment of the royalty agreement interest to KAHI is invalid and fraudulent, and that KAHI and Kraft L.P. are, in fact, a single entity owned and managed by Kraft. Hence, Oldcastle concludes that the royalty agreement proceeds are subject to garnishment by virtue of Kraft L.P., as the judgment debtor, still being the sole beneficiary of the royalty agreement.

CalMat, as a disinterested stakeholder at risk of suffering multiple liabilities from an erroneous distribution of the royalty proceeds, filed this interpleader action in January 2016, naming as Defendants Oldcastle, Kraft L.P., *pro se* Kraft, KAHI, and John Does 1-5. About two weeks after CalMat filed the interpleader action, the Court stayed the garnishment action pending the outcome of this interpleader action. (Doc. 8) in MC No.15-33 WJ.[1]

On October 5, 2016, the Court (1) ordered that the royalty payments be interpleaded into the Court registry, (2) discharged CalMat from any liability in connection with the payment of the proceeds under the royalty agreement so long as CalMat pays those proceeds into the Court registry pursuant to the royalty agreement and the Court's order, (3) excused CalMat from further participation as a litigant except to make the recurring royalty payments into the Court registry, (4) granted CalMat's request for an award of reasonable attorneys' fees and costs incurred in bringing the interpleader lawsuit, and (5) determined that those fees and costs would be paid from the interpleaded funds. (Doc. 55) at 12. Because CalMat had not, at that time, filed any documentation from which the Court could determine the amount of reasonable attorneys' fees and costs CalMat incurred in bringing the interpleader action, the Court ordered CalMat to file a motion for attorneys' fees and costs with "a supporting brief, affidavits, and time records to support such an award…." *Id.* at 11.

On October 31, 2016, CalMat filed its first motion for attorneys' fees and costs. (Doc. 61). On December 23, 2016, the Court denied that motion without prejudice to CalMat filing an amended motion for an award of attorneys' fees and costs. (Doc. 78). The Court denied the first motion for attorneys' fees and costs for two important reasons. First, CalMat did not support its assertion of reasonable attorney rates ($395 per hour for Douglas Vadnais and $205 per hour for

---

[1] In January 2017, the Court filed a second order staying the garnishment lawsuit pending the outcome of the interpleader case. (Doc. 23), filed in MC No. 15-33 WJ.

Cristina Mulcahy) with a relevant affidavit. *Id.* at 3. Second, CalMat failed to provide time records to prove the expenditure of reasonable hours. *Id.* at 3-5.

In discussing the first motion for attorneys' fees and costs, the Court also determined that CalMat is entitled only to attorneys' fees and costs associated with bringing the interpleader lawsuit, and not to attorneys' fees and costs associated with bringing the underlying garnishment case. *Id.* at 3. Moreover, to protect any privileged attorney-client information in the time records, the Court required that an amended motion for an award of attorneys' fees and costs provide "properly redacted time records…." *Id.* at 5.

From the inception of the interpleader case to the October 5, 2016, order requiring that the royalty payments be interpleaded and excusing CalMat from further participation as a litigant, CalMat's activities in the interpleader case included responding to a motion to dismiss filed by Kraft and Kraft L.P., and to a motion for summary judgment filed by KAHI. (Docs. 16, 21, and 27). In addition, CalMat responded to various *pro se* filings by Kraft. (Docs. 38, 39, 47, and 53).

After the Court excused CalMat from further participation as a litigant, CalMat, nonetheless, continued to participate as a litigant. Aside from the motions for attorneys' fees and costs, which the Court directed CalMat to file and brief, CalMat apparently participated in formulating the Joint Status Report and Provisional Discovery Plan (JSR), attended the Scheduling Conference, filed a motion to strike Kraft's "Notices," and attended a February 28, 2017, status conference.[2] (Docs. 64, 67, 111, 113, 117, and 118). The Court ultimately

---

[2] Although the Court excused CalMat from participation as a litigant on October 5, 2016, CalMat notes that Kraft, nonetheless, sent a letter in December 2016 to CalMat's successor in interest threatening a RICO action if it did not pay him money and take certain actions. (Doc. 107-1).

dismissed the interpleader complaint against Kraft, entered an adverse judgment against Kraft, L.P., and dismissed Kraft, L.P. (Doc. 57 and 126).

*B. The Amended Motion*

CalMat submitted with its Amended Motion an affidavit by William Keleher, a qualified Albuquerque, New Mexico, attorney, who attests that the hourly rate requested by Vadnais of $395 per hour and the hourly rate requested by Mulcahy of $205 per hour "are well within the scope of reasonable and prevailing market rates charged by attorneys in New Mexico with similar experience." (Doc. 82-3) at ¶ 18. Like Keleher, Vadnais and Mulcahy are Albuquerque attorneys. CalMat also submitted redacted time records, an affidavit by Vadnais, and documentation related to costs.

CalMat claims that from the inception of this interpleader lawsuit to the time it filed the first motion for attorneys' fees and costs on October 31, 2016, Vadnais reasonably worked 58.9 hours and Mulcahy worked 73.1 hours for a total of $38,214.50 in attorneys' fees. (Doc. 82) at 3. CalMat further claims that it is entitled to attorneys' fees and costs incurred after it filed the first motion for attorneys' fees and costs to the present. Those attorneys' fees amount to an additional $14,317.50 which represents 18.3 hours of work by Vadnais and 28.8 hours of work by Mulcahy. *Id.* at 6. CalMat, therefore, seeks a total of $52,532.00, plus the applicable gross receipts tax, in attorneys' fees for bringing this interpleader action.

Additionally, CalMat claims that reasonable costs include $40.00 for corporate entity searches for service of process, a $400.00 fee to file this lawsuit, and $298.75 for service of process. *Id.* at 7. These costs amount to $738.75.

*C. Discussion*

   *1. Reasonable Attorneys' Fees: The Lodestar Calculation*

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). Courts make the lodestar calculation by multiplying the attorney's reasonable hourly rate by the number of hours the attorney reasonably expended. *Id.*

      *a. Reasonable Hourly Rates*

The party requesting attorney's fees bears the burden of showing that the requested rates are consistent with the prevailing rates in the community. *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000) ("party requesting the fees bears 'the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" (citation omitted)). To carry that burden, the movant must show by "satisfactory evidence — in addition to the attorney's own affidavits — that the requested" hourly rates are the prevailing market rates. *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984).

Here, CalMat provided Keleher's affidavit to show the prevailing market rates. The Court notes that neither Oldcastle nor KAHI object to the requested hourly rates. Based on the Keleher affidavit, the Court finds that the hourly rates requested by Vadnais and Mulcahy are consistent with the prevailing rates and, thus, are reasonable.

      *b. Reasonable Hours*

Both Oldcastle and KAHI object to CalMat seeking attorneys' fees for work on the Amended Motion. KAHI also objects to work performed prior to the filing of the interpleader

6

action, work on the garnishment action, "work on matters that were not important to Calmat [sic]," and the redacted time entries. (Doc. 97) at 3. KAHI argues that the attorneys' fees should be less than $20,000.

As the Tenth Circuit explained, the movant bears "the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1250 (10th Cir. 1998). The Tenth Circuit, therefore, discourages "block billing," the practice of "lumping multiple tasks into a single entry of time…." *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1214–15 (10th Cir. 2000). Even so, the Tenth Circuit "has not established a rule mandating reduction or denial of a fee request if the prevailing party submits attorney-records which reflect block billing." *Id.* at 1215. Ultimately, the Court has an obligation to "carefully scrutinize the total number of hours reported to arrive at the number of hours that can reasonably be charged to the losing party, much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done." *Ramos v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983), *overruled on other grounds*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987).

Despite the movant's burden and the Court's obligation, the Court recognizes that attorney's billings and invoices can contain information protected by the attorney-client privilege. However, most courts "hold that an attorney's billings and invoices are protected by the attorney-client privilege only to the extent they contain confidential information." *Nat'l Sur. Corp. v. Dustex Corp.*, 2014 WL 46541, at *4 (N.D. Iowa) (citations omitted). Consequently,

7

the movant should redact only those portions of the time records which contain confidential information. *Id.* (concluding party resisting disclosure of time records "may not rely on a blanket claim of privilege in refusing to produce" those records and may redact specific entries containing confidential information). Of course, "entries that describe only generally the work performed will not be considered 'confidential information.'" *Id.*

### *(1) Work on the Amended Motion*

The work on the Amended Motion included redacting time records and acquiring Keleher's affidavit. These activities would have been conducted in the first instance to support the initial motion for an award of attorneys' fees and costs. Consequently, the fact that CalMat conducted these activities now as opposed to earlier does not diminish the reasonableness of those activities in preparing a motion for an award of attorneys' fees and costs. The Court will, therefore, allow those hours for work on the Amended Motion which are explicitly and clearly indicated in the time entries.

The Court observes that there are also block billings which mention work related to both the attorneys' fees and costs motions, and to activities occurring after the Court excused CalMat from further participation as a litigant.[3] Those block billings fail to show which part of the time was allotted to each specific task. As such, the Court cannot determine what portion of the time was expended on the attorneys' fees and costs motions. As a result, the Court will not allow those hours.

---

[3] For example, Mulcahy billed time on November 28, 2016, for a phone call "regarding stipulations in Joint Status Report and CalMat's reply in support of attorneys' fees and costs." (Doc. 82-1) at 38.

*(2) Work Performed Prior to the Filing of the Interpleader Action*

As noted above, the Court ordered that CalMat is entitled to an award of reasonable attorneys' fees incurred in bringing the interpleader action. To the extent that the Court can discern from the time entries that Vadnais and Mulcahy's activities prior to the filing of the interpleader action pertain to the interpleader action, the Court will allow those hours.

*(3) Work on the Garnishment Action*

Because the Court determined that attorneys' fees will not be awarded for work on the garnishment action, the Court will not consider those time entries which clearly refer to activities pertaining to the garnishment case. The Court will further not consider block billings which mention work related to both the garnishment action and the interpleader action because the Court cannot ascertain which part of the time was allotted to each specific task.[4] The Court will, likewise, not consider those hours.

*(4) Work on Matters Not Important to CalMat*

KAHI objects to allegedly unnecessary work performed by CalMat's attorneys, including responding to the motions to dismiss and for summary judgment. Those motions and other actions by CalMat concerning the interpleader lawsuit that occurred before the Court's October 5, 2016, order were relevant to developing the case so that the Court could decide whether to direct an interpleader of the royalty payments. The Court, therefore, finds that those hours are reasonable and allowable.

However, the Court finds that, except for the hours clearly related to the attorneys' fees and costs motions, attorney hours expended in activities which occurred after the Court entered

---

[4] For example, on December 8, 2015, Mulcahy billed time to: "Revise Motion to Amend Answer, Complaint in Interpleader, Motion to Interplead, and Proposed Amended Answer by Garnishee." (Doc. 82-1) at 6.

its October 5, 2016, excusing CalMat from further participation as a litigant are not reasonable. Such activities include work on the JSR, attending the Scheduling Conference, filing a motion to strike, and attending a status conference. When the Court granted CalMat's motion for an award of attorneys' fees incurred in bringing the interpleader action, the Court did so with the understanding that, once CalMat interpleaded the royalty payments, CalMat completed its role in bringing the interpleader action. This understanding was reflected in the Court's October 5, 2016, order excusing CalMat from further participation as a litigant. Accordingly, except for the hours clearly related to the attorneys' fees and costs motions, the Court's order awarding attorneys' fees and costs did not contemplate compensation for attorney hours which occurred after the Court directed the interpleading of the royalty payments on October 5, 2016. Hence, the Court disallows those hours.

*(5) Redacted Time Entries*

The Court may disallow redacted time entries where the time entries "are so redacted that it is 'difficult if not impossible' for a court to sufficiently evaluate the services rendered and fees charged, and results in 'the exclusion of basic material information which undermines the integrity of the entire [fee] petition….'" *Reid v. Unilever United States, Inc.*, 2015 WL 3653318, at *8 (N.D. Ill.), *aff'd sub nom. Martin v. Reid*, 818 F.3d 302 (7th Cir. 2016) (citations omitted). In other words, "the relevant inquiry is whether the time entries are 'sufficiently detailed to permit the Court to determine whether the hours expended were reasonable and necessary to the conduct of the litigation.'" *Id.* (citation omitted). *See also Osterweil v. Bartlett*, 92 F. Supp. 3d 14, 31 (N.D.N.Y. 2015) ("courts in this circuit have reduced attorney's fees on vagueness grounds where, as here, the time records were 'so thoroughly redacted that the Court could not reasonably review them.'" (citation omitted)); *Randolph v. Dimension Films*, 634 F. Supp. 2d

779, 800 (S.D. Tex. 2009) ("Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended."); *Home Funding Grp., LLC v. Kochmann*, 2008 WL 4298325, at *6 n. 7 (D. Conn.) ("None of the hours billed by Luisa Lopez are awardable because the entries were so thoroughly redacted that the Court could not reasonably review them."). Moreover, an attorney's duty "to protect the attorney-client privilege, or to prevent dissemination of other confidential information, does not override the court's duty to review fees." *In re Las Vegas Monorail Co.*, 458 B.R. 553, 558 (Bankr. D. Nev. 2011).

In this case, many of the time entries are so heavily redacted that the Court cannot discern whether the expended time is reasonable. For example, redacted time entries include cryptic descriptions such as "Notes," "Prepare," "Review," and "Outline," with no other explanation. (Doc. 82-1) at 33. These redacted time entries simply do not provide sufficient information for the Court to determine whether they reflect reasonable expenditures of time. The Court, therefore, excludes the hours documented in those heavily redacted time entries.

### c. Conclusion

Considering the above findings, the Court concludes that Vadnais reasonably expended 29.65 hours at $395 per hour for a total of $11,712.00 in reasonable attorney's fees. The Court further concludes that Mulcahy reasonably expended 66.20 hours at $205 per hour for a total of $13,570.50 in reasonable attorney's fees. Altogether, then, CalMat is entitled to an award of $25,282.50, plus the applicable gross receipts tax, in reasonable attorneys' fees for bringing this interpleader action.

*2. Reasonable Costs*

The Court finds, and Oldcastle and KAHI do not dispute, that the costs of $738.75 are reasonable and should be awarded to CalMat as costs incurred in bringing this interpleader action.

IT IS ORDERED that

1. Plaintiff CalMat Co.'s Amended Motion for Attorneys' Fees, Costs, and Expenses (Doc. 82) is granted in part;

2. CalMat is awarded $25,282.50, plus the applicable gross receipts tax, in reasonable attorneys' fees;

3. CalMat is awarded reasonable costs of $738.75; and

4. the Clerk is authorized to pay these attorneys' fees and costs to CalMat from the royalty payments interpleaded in the Court's registry.

_____
UNITED STATES DISTRICT JUDGE